**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0271-17T1

C.H., an infant by her Guardian
ad Litem, Brenda Cummings,
and BRENDA CUMMINGS,
individually,

      Plaintiffs-Appellants,

v.

RAHWAY BOARD OF EDUCATION,
RAHWAY MIDDLE SCHOOL,
RAHWAY 7TH AND 8TH GRADE
ACADEMY, and GARRY MARTIN

      Defendants-Respondents.

_____

         Argued October 10, 2018 – Decided November 16, 2018

         Before Judges Yannotti, Gilson, and Natali.

         On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-3701-15.

         Juan C. Cervantes argued the cause for appellants (Forman & Cardonsky, attorneys; Juan C. Cervantes, on the briefs).

Howard M. Nirenberg argued the cause for respondents (Nirenberg & Varano, LLP, attorneys; Howard M. Nirenberg, of counsel; Sandra N. Varano, on the brief).

PER CURIAM

Plaintiff was injured while playing in a student-teacher fundraising basketball game. She appeals from an August 23, 2017 order granting summary judgment and dismissing her claims against defendants, who were her school, the school board, and a teacher. We affirm because the undisputed facts establish that defendants did not breach a duty of care to plaintiff.

I

We take the facts from the summary judgment record and view them in the light most favorable to plaintiff. In June 2013, plaintiff was fourteen years old, in eighth grade, and a member of her school basketball team.

On June 11, 2013, plaintiff participated in a basketball game in which a team of teachers played against a team of students. The game was an annual fundraising event, and student participation was voluntary. Approximately fifteen teachers and school safety officials and seventeen students participated in the game. The game was officiated by at least one referee. There were also five other teachers who did not play in the game, but attended to provide supervision.

2

During the game, plaintiff went up for a rebound, and made contact with defendant Garry Martin, who is a teacher. Plaintiff landed awkwardly, fell, and injured her knee. At her deposition, plaintiff described how her injury occurred:

> Everyone swarm[ed] in, but the teacher [came] running down, like, I guess, because he wanted to get the ball, and it was offensive rebound I was going for. And he went up, I went up. But he shoved me, like, to get me out of the way so that he could get the rebound. And when I came down I had to stop myself from falling. And I couldn't plant right.

Defense counsel questioned plaintiff further as to the details of the events that preceded her injury. Specifically, counsel asked and plaintiff answered:

> [Counsel] [I]f I understood your testimony, when you went up, everybody close to the basket went up also?
>
> [Plaintiff] Yes.
>
> . . . .
>
> [Counsel] So you are going up for the rebound, and contact is made?
>
> [Plaintiff] Yes.
>
> [Counsel] And do you know who made contact with you?
>
> [Plaintiff] Mr. Martin.
>
> [Counsel] And where was Mr. Martin when he made contact with you?

3

[Plaintiff]  On my left side.

        . . . .

[Counsel]  Mr. Martin is to your left.  Is he even with you?

[Plaintiff]  No. He's on an angle.

[Counsel]  Is he on an angle in front of you or behind you?

[Plaintiff]  Yes, in front of me.

[Counsel]  So he's closer to the basket?

[Plaintiff]  Yes.

        . . . .

[Counsel]  So as he's in front of you to the left and he's going up for the rebound and you're going up for the rebound, what happens?

[Plaintiff]  He shoves back to try to rip through.

[Counsel]  When you say "he shoves back," does he push his body backwards to create more space between him and the rim?

[Plaintiff]  Yes.

[Counsel]  And he does that in order to be able to get a better angle - -

[Plaintiff]  Yes.

[Counsel]   - - to get the ball?

[Plaintiff]   Yes.

[Counsel]   And as he did that, you are, I assume, going for the ball so you are leaning forward?

[Plaintiff]   Yes.

[Counsel]   And jumping forward?

[Plaintiff]   Yes.

[Counsel]   And as you're leaning and jumping forward and he's pushing back to create some space, contact is made?

[Plaintiff]   Yes.

. . . .

[Counsel]   And what part of his body makes contact with what part of your body?

[Plaintiff]   His upper body hits my upper body.

Plaintiff then testified that after her upper body and Martin's upper body collided, she could not stop herself from falling.

In October 2015, plaintiff, through her guardian ad litem, filed a complaint against Martin, her school, and the school board. Thereafter, she amended her complaint. In her amended complaint, plaintiff asserted claims for negligence and intentional conduct and she and her guardian ad litem sought damages

5

related to plaintiff's knee injury. The parties engaged in and completed discovery. Thereafter, defendants moved for summary judgment.

The trial court heard oral arguments and, on August 23, 2017, the court issued a written opinion and entered an order granting summary judgment to defendants. The court first determined that plaintiff had failed to present evidence that defendants had engaged in negligent supervision. In that regard, the court found that the game was officiated by a referee and there were approximately five teachers, who did not participate in the game, but who attended to provide supervision. The court went on to reason that there was no showing that plaintiff's injury, which occurred when the players jumped for a rebound, could have been prevented by further supervision.

The court next held that a participant in recreational sport activity cannot assert a claim of negligence against a co-participant who causes her injury. Instead, such a plaintiff must show that the co-participant engaged in reckless or intentional conduct that caused the injury. See Crawn v. Campo, 136 N.J. 494, 497 (1994). Accepting plaintiff's description of the incident, the court found that there were no facts showing that Martin had acted recklessly or intentionally. Plaintiff now appeals.

## II

On appeal, plaintiff makes two arguments. First, she contends that Martin, as a teacher, and her school and the school board, as Martin's employers, owed her a duty of supervisory care, which they breached. Second, she argues that there was a material fact issue concerning whether Martin acted recklessly during the basketball game. We disagree. There are no facts showing defendants breached their duty to provide supervision to plaintiff as a student participating in a basketball game. Moreover, accepting plaintiff's description of the incident, the material undisputed facts do not show that Martin acted recklessly or intentionally.

We conduct a de novo review of an order granting summary judgment, and apply the same standard employed by the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014) (first citing Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014); then quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)). Accordingly, we determine whether the moving party has demonstrated that there are no genuine disputes as to material facts and, if so, whether the facts, viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law. Id. at 405-06 (first quoting R. 4:46-2(c); then quoting Brill v.

A-0271-17T1

Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). When no issues of material fact exist, but a question of law remains, our review of that legal issue is plenary. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A. The School's Duty to Supervise

School officials have a duty to supervise the children in their care. See e.g., Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 296 (2007) (stating that "[s]chool officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty.'" (second alteration in original) (quoting Caltavuturo v. City of Passaic, 124 N.J. Super. 361, 366 (App. Div. 1973))). Accordingly, "[t]eachers must at times be present to oversee students on school playgrounds and in hallways, classrooms, lunchrooms and auditoriums." Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45, 55 (App. Div. 2007). That duty may be violated by inactions, as well as actions. Titus v. Lindberg, 49 N.J. 66, 74 (1967).

The supervisory duty extends to "foreseeable dangers . . . [that] arise from the careless acts or intentional transgressions of others." Frugis v. Bracigliano,

177 N.J. 250, 268 (2003). School officials must exercise "that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances." Caltavuturo, 124 N.J. Super. at 366 (citing Dailey v. L.A. Unified Sch. Dist., 470 P.2d 360, 363-64 (Cal. 1970)).

Here, there was no showing of a breach of the duty to supervise plaintiff. The basketball game was officiated by a referee. Moreover, additional supervision was provided by approximately five teachers who did not participate in the game. There were no facts showing that the game was being conducted in a reckless or out-of-control manner before plaintiff was injured. In that regard, plaintiff testified that she had only played for a few minutes in the first half of the game, and her injury occurred within five minutes of the start of the second half of the game. While plaintiff testified that the teachers were beginning to play "aggressively," she also acknowledged that the game was a typical basketball game and the referee was not calling many fouls.

Plaintiff was injured when she jumped for a rebound and came into contact with another player who happened to be a teacher. Those undisputed facts establish that plaintiff's injury did not result from a lack of supervision. Instead, the undisputed facts establish that plaintiff was injured while participating in a recreational sport activity.

9

B.   Injuries in Recreational Sports

"[T]he duty of care applicable to participants in informal recreational sports is to avoid the infliction of injury caused by reckless or intentional conduct."   Schick v. Ferolito, 167 N.J. 7, 12 (2001) (alteration in original) (quoting Crawn, 136 N.J. at 497).  Accordingly, a participant who causes injury to another participant in a recreational sporting activity cannot be found liable for simple negligence.   Our Supreme Court has explained that two considerations support this heightened standard:  "the promotion of vigorous participation in athletic activities, and the avoidance of a flood of litigation generated by participation in recreational games and sports."  Id. at 12-13 (citing Crawn, 136 N.J. at 501).  The Supreme Court has reasoned that a recklessness standard is more appropriate because a certain level of risk of harm is a normal part of a recreational game.  Id. at 13 (citing Crawn, 136 N.J. at 506-08).  In that regard, the Court has explained:

> Our conclusion that a recklessness standard is the appropriate one to apply in the sports context is founded on more than a concern for a court's ability to discern adequately what constitutes reasonable conduct under the highly varied circumstances of informal sports activity.  The heightened standard will more likely result in affixing liability for conduct that is clearly unreasonable and unacceptable from the perspective of those engaged in the sport yet leaving free from the supervision of the law the risk-laden conduct that is

A-0271-17T1

> inherent in sports and more often than not assumed to be "part of the game."

> [Crawn, 136 N.J. at 508.]

Here, plaintiff has conceded that Martin "was not intentionally trying to injure [her]." Indeed, the record contains no facts that would support a finding that Martin acted intentionally to injure plaintiff.

Consequently, the question here is whether plaintiff has presented facts showing that Martin acted recklessly when he jumped for a rebound. According to plaintiff's own testimony, Martin was on an angle in front of her. Martin then pushed his body backward to create more space between himself and the basketball rim while jumping for the ball. The contact occurred when plaintiff leaned and jumped forward to try to get the ball and her upper body came into contact with Martin's upper body. Such facts, even when viewed in the light most favorable to plaintiff, do not establish reckless conduct in a basketball game. Instead, those facts describe normal activity that occurs when players attempt to make rebounds during a basketball game.

Plaintiff did not describe any conduct by Martin that could be found to be excessively harmful conduct. See Crawn, 136 N.J. at 508 ("The heightened recklessness standard recognizes a commonsense distinction between excessively harmful conduct and the more routine rough-and-tumble of sports

that should occur freely on the playing fields and should not be second-guessed in courtrooms."). Moreover, plaintiff's testimony provides no evidence that Martin disregarded a known or obvious risk that was so great as to make it highly probable that harm would follow. Indeed, there was no evidence that Martin was aware that plaintiff was angled behind him and was jumping forward as he was pushing backwards and jumping for the rebound.

To the extent that plaintiff argues that a negligence standard should apply because Martin was a teacher, we find no support for such a change in the law. Martin and plaintiff participated in the game as players. As already pointed out, the school provided appropriate supervision by a referee and other teachers. In her candid testimony, plaintiff described Martin's actions as the actions typical of any basketball player. There are no facts in the record to demonstrate that Martin used his position as a teacher to conduct himself differently than a normal player. Accordingly, there is no basis to impose a greater duty on Martin than any other participant in a recreational sporting activity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12                                                                A-0271-17T1